# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

ROGELIO OCHOA, )
)
Plaintiff, )
) Case No. 16-cv-6922
v. )
) Judge Charles R. Norgle
MENARD, INC., a Wisconsin Corporation )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Rogelio Ochoa ("Plaintiff") sues Defendant Menard, Inc. ("Defendant") under the theory of premises liability for injuries sustained when Plaintiff slipped and fell at Defendant's place of business. Before the Court is Defendant's motion for summary judgment. For the following reasons, Defendant's motion is granted.

## I. BACKGROUND

On September 21, 2009, Plaintiff was a customer at Defendant's place of business located at 4501 W. North Avenue, Chicago, Illinois (the "Menard's store") and was accompanied by his girlfriend, his girlfriend's sister, and his daughter. While shopping, Plaintiff made his way to the restroom and encountered Defendant's employee, Mark Franklin ("Franklin"), restocking an aisle leading the restroom. Franklin was removing pieces of particle board from a flatbed cart, approximately waste high, and placing the boards onto shelves on the right hand side of the aisle. Franklin had positioned the flatbed cart so that it spanned from the right side of the aisle into the center of the aisle. There was also a shopping cart loaded with merchandise in the center of the aisle and another flatbed cart loaded with merchandise on the left side of the aisle. Obstructions

related to the Franklin's stocking activity spanned the entire width of the aisle. The area was well lighted.

Upon encountering the stocking activity, Plaintiff entered the aisle while the group accompanying him stayed behind. He did not proceed slowly, but walked at what he characterized as an "average" speed. Defendant's Statement of Material Facts ("Def.'s SOMF"), Ex. A, Plaintiff's Deposition ("Pl.'s Dep.") at 50:20-23. Plaintiff maneuvered himself between the flatbed cart which Franklin was unloading and the shopping cart filed with merchandise in the middle of the aisle. Plaintiff turned sideways in order to slide between the two obstacles, as there was insufficient space for Plaintiff to proceed facing forward. Upon clearing the two obstacles, Plaintiff took two large steps forward and stepped on a piece of plastic on the floor, at which point he lost his balance and fell. Plaintiff caught himself with his hands and his body did not make contact with the floor. Plaintiff stated at his deposition that he was not distracted when he stepped on the piece of plastic, but he does not remember precisely which direction he was looking after he cleared the two obstacles blocking the aisle. Pl.'s Dep. at 48:2-22. Regardless, he did not see the piece of plastic before he fell. Id. at 49:6-8. Plaintiff further stated that he proceeded to the restroom after he fell and then paid for several items at the register before driving himself home. Id. at 33:16, 34:13.

The Parties dispute the exact size and color of the piece of plastic on which Plaintiff slipped. According to Plaintiff, the piece of plastic was transparent and "as small as an inch or less." Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp. to Def.'s SOMF) ¶ 29, 35. Defendant, however, maintains that the piece of plastic was dark in color and "approximately 4 inches long by 2 inches wide." Def.'s SOMF ¶ 35. But, the Parties agree that the piece of plastic on which Plaintiff slipped was a "corner protector" for the particle boards that

were being unloaded by Franklin. The Parties also agree that there were multiple other unobstructed aisles that Plaintiff could have used to access to the restroom.

The Court need not rely exclusively on the Parties' subjective rendition of events, as the incident in question was captured on video by Defendant's security camera. See Def.'s SOMF, Ex. B. As depicted below, the video is mostly consistent with the Parties' description of the incident. However, the video clearly shows several dark colored objects on the floor within a few feet of the flatbed cart that Franklin is unpacking. As mentioned above, the Parties agree that the dark colored objects shown in the video are corner protectors for the particle board. Defendant states that the video is proof that the corner protectors were dark in color. Plaintiff, however, maintains that the video does not accurately depict the color of the corner protectors and asserts that the corner protectors appear dark in the video because they were "reflecting the darkly colored concrete floor." Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Resp.") at 5. Notwithstanding this dispute, the video corroborates that Plaintiff entered the aisle that Franklin was restocking, maneuvered between the flatbed cart and shopping cart, took two large steps forward, and slipped on one of the corner protectors.





## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id. Finally, "to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 702 (7th Cir. 2009).

**B. Defendant Did Not Owe Plaintiff a Duty Because the Stocking Activity and Condition of the Aisle was an Open and Obvious Condition**

Defendant argues that it owed no duty to Plaintiff because the flatbed cart and related stocking activity were an open an obvious condition. Defendant also argues that Plaintiff is contributorily negligent as a matter of law because he failed to take a safer alternative route to the restroom. In response, Plaintiff argues that both the flatbed cart and the corner protector were not open and obvious conditions. Plaintiff further argues that the there is no evidence that he knew or should have known that the corner protectors would be in the aisle and therefore he cannot be contributorily negligent for choosing to take the path that he did. The Court will address each argument in turn.

Illinois tort law controls this case. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Anicich v. Home Depot U.S.A., Inc., 852 F.3d 643, 648 (7th Cir. 2017), as amended (Apr. 13, 2017). Under Illinois law, "the elements of a negligence cause of action are: a duty owed by the defendant to the plaintiff; a breach of that duty; and an injury proximately caused by the breach." Matthews v. Aganad, 394 Ill. App.3d 591, 598 (2009). The existence of a duty owed by defendant depends on "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." Bucheleres v. Chicago Park Dist., 171 Ill.2d 435, 445 (1996). "Unless a duty exists, a plaintiff cannot recover." Kleiber v. Freeport Farm & Fleet, Inc., 406 Ill. App. 3d 249, 256 (2010). Whether defendant owed plaintiff "a duty of reasonable care under a particular set of circumstances is an issue of law for the court." Bucheleres, 171 Ill.2d at 445.

The existence of a duty depends on four factors: the likelihood of injury; the reasonable foreseeability of such injury; the magnitude of the burden of guarding against injury; and the consequences of placing that burden on the defendant. Id. at 456; Camp v. TNT Logistics Corp.,

5

553 F.3d 502, 505 (7th Cir. 2009). Where a plaintiff alleges that an injury was caused by a condition on a defendant's property, and plaintiff was lawfully on the premises, Illinois courts follow the Restatement (Second) of Torts ("Restatement") in determining whether the injury was reasonably foreseeable. Kleiber, 406 Ill. App. 3d at 256. The Restatement provides that "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." Id. (quoting Restatement (Second) of Torts § 343 (1965)).

In Ward v. K Mart Corporation, the Illinois Supreme Court adopted an exception to the general rule regarding the reasonable foreseeability of injury, as stated above. See 136 Ill.2d 132, 149 (1990). That exception, known as the "open and obvious" rule, is set forth by section 343A of the Restatement, which provides that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Id. (quoting Restatement (Second) of Torts, § 343A). Further, Illinois courts have held that "the determination of whether the condition is open and obvious depends not on plaintiff's subjective knowledge but, rather, on the objective knowledge of a reasonable person confronted with the same condition. Sandoval v. City of Chicago, 357 Ill. App. 3d 1023, 1028 (2005).

In Bucheleres, the Illinois Supreme Court reaffirmed the open and obvious rule, stating that "[i]n cases involving obvious and common conditions, such as fire, height, and bodies of

water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition. The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." <u>Bucheleres,</u> 171 Ill.2d at 448. The court also affirmed the "forgetfulness or distraction" limitation on the open and obvious rule, which provides that a defendant will still be liable for an injury caused by an open and obvious condition "where the [defendant] has reason to expect that the [plaintiff's] attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." <u>Id.</u> at 453 (quoting Restatement (Second) of Torts § 343A, Comment f, at 220). Further, the court clarified that even if a condition is found to be open and obvious, this is not dispositive of whether defendant owed plaintiff a duty. <u>Id.</u> at 456. Rather, the open and obvious nature of the condition affects the determination of the reasonable foreseeability of such injury, but a complete analysis of all four factors relevant to the court's imposition of a duty is still necessary. <u>See</u> <u>id.</u> at 456.

In the instant case, the central issue is whether the stocking activity and condition of the aisle presented an inherent danger such that a reasonable person, under the same circumstances as Plaintiff, should have appreciated the danger and avoided entering the aisle. If so, the stocking activity and condition of the aisle was an open and obvious condition. For the following reasons, the Court concludes that the stocking activity and condition of the aisle was an open and obvious condition.

The security video clearly shows that the aisle Plaintiff entered was effectively blocked off by Franklin's stocking activity. There were numerous carts full of merchandise spanning the width of the aisle, such that Plaintiff had to squeeze himself between two of the carts in order to

enter the aisle. Further, from Plaintiff's perspective, Franklin was clearly visible unloading large boards from a flatbed cart and stacking them on the shelf. Simply put, the aisle was not in a neat and orderly fashion due to Franklin's stocking activity. The reasonable person, when confronted with such a scenario, understands that there are certain inherent risks when entering this type of work in progress – including that there could be stray objects, such as the corner protectors, littering the floor – as this is a common sight during restocking activity at retail stores. Further, this inherent risk is especially evident when the aisle is blocked off by numerous obstacles related to the stocking activity, signaling to the reasonable person that he should avoid the area. Indeed, Plaintiff's three companion shoppers remained about ten feet from the work area.

The open and obvious nature of Franklin's stocking activity is supported by Wilfong v. L.J. Dodd Const., 401 Ill. App. 3d 1044 (2010). In that case, the plaintiff was injured when he fell in a rut at a construction site. Id. at 1053. The plaintiff argued that the rut was not open and obvious because many of the ruts on the construction site were covered with water and therefore not visible. Id. However, the court held that the rut was open and obvious because the "plaintiff's testimony clearly show[ed] that he was aware that he was walking over ruts, stepping from one to another." Id. Further, the court stated that "the question is not whether one particular rut would collapse, but rather whether a reasonable person would anticipate the danger of crossing over the ruts." Id. at 1054.

Here, whether Plaintiff saw the specific corner protector that he slipped on is immaterial because it is undisputed that Plaintiff was aware of the ongoing stocking activity and the general condition of the aisle. Further, similar to Wilfong, the issue is not whether Plaintiff was subjectively aware of the risk of stepping on the corner protector, but rather whether a reasonable person would anticipate the danger of walking into the stocking activity. As explained above, a

reasonable person understands that there are certain inherent risks when entering an aisle in which an employee is restocking items, especially when the aisle is blocked off.

Finally, while neither party raised the argument, the Court notes that the "forgetfulness or distraction" limitation on the open and obvious rule is not applicable in this case. Plaintiff testified that nothing attracted his attention or distracted him immediately before he fell. Pl.'s Dep. at 48:17-22. Further, Plaintiff was not carrying any merchandise which would have obstructed his view. Accordingly, the Court concludes that Plaintiff's injury was not reasonably foreseeable, given the open and obvious nature of the stocking activity.

Next, the Court must consider the other factors regarding whether Defendant owed Plaintiff a duty. With respect to the first factor, the likelihood of injury, "the law generally considers the likelihood of injury slight when the condition in issue is open and obvious because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks." Bucheleres, 171 Ill. 2d at 456. Thus, given the Court's holding above, this factor does not weigh in favor of finding that Defendant owed Plaintiff a duty.

Consideration of the last two factors also indicates that no duty should be imposed against Defendant. These factors are the magnitude of the burden of guarding against injury and the consequences of placing that burden on the defendant. Plaintiff argues that protecting against his injury would merely involve moving the corner protectors out of the aisle. Plaintiff's argument, however, ignores that the he was in the better positon to prevent his injury, given the open and obvious nature of the stocking activity. In order for Defendant to effectively guard against such an injury, it would need to be hypervigilant in monitoring areas where stocking activity is taking place, even in those aisles which are blocked off, such as in this case. This would be an onerous burden for Defendant to "to guard against injuries which result from a

person's voluntary encounter with a known risk." Camp, 553 F.3d at 511. Accordingly, the Court concludes that Defendant did not owe a duty to Plaintiff under Illinois law. Therefore, absent a duty owed to Plaintiff, his claim must fail. In light of aforementioned holding, the Court need not consider Defendant's argument that Plaintiff was contributorily negligent as a matter of law.

### III. CONCLUSION

In sum, the stocking activity conducted by Defendant's employee was an open and obvious condition and therefore Plaintiff's injury was not reasonably foreseeable. Further, the likelihood of Plaintiff's injury was slight, given the open and obvious nature of the stocking activity and condition of the aisle. Finally, preventing Plaintiff's injury would be an onerous burden on Defendant, as it would require hypervigilance in protecting customers from an open and obvious danger. Accordingly, Defendant did not owe a duty to Plaintiff under Illinois law. Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 26, 2017